# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**REGINA SHARBAUGH,** *executor of the* )
*estate of Robert H. Sharbaugh,* )
)
       Plaintiff, )
)
)
)
       v. )      Civil Action No. 14-1723
)
)
**WEST HAVEN MANOR, LP** and )
**SUGAR CREEK REST, INC.** d/b/a )
**QUALITY LIFE SERVICES,** )
)
       Defendants. )

## <u>OPINION</u>

**CONTI, Chief U.S. District Judge**

      This employment discrimination and retaliation case is being pursued by Regina

Sharbaugh on behalf of the estate of Robert Sharbaugh ("Sharbaugh"), the individual who

claimed that West Haven Manor, L.P. ("West Haven") wrongfully terminated him because of his

disability and his request that it be accommodated. (ECF No. 67 (Joint Statement of Material

Facts ("JSMF")) ¶ D1.[1])   Pending before the court is a motion for summary judgment filed by

defendants West Haven and Sugar Creek Rest Inc., d/b/a Quality Life Services ("QLS"),

(collectively, "Defendants") seeking judgment as a matter of law with respect to all claims

asserted in the second amended complaint. (ECF No. 52.)

---

[1] The Joint Statement of Material Facts combines both Defendants' Undisputed Material Facts,
numbers 1 through 29, and Plaintiff's Undisputed Material Facts, numbers 1 through 103. (ECF
No. 67.)   In order to avoid confusion from the overlap in some numbers used by both parties, in
this opinion the court will identify Defendants' Undisputed Material Facts as "JSMF ¶ D__," and
Plaintiff's Undisputed Material Facts as "JSMF ¶ P__."   Both sets of facts are found in ECF
Number 67 on the docket.

In the second amended complaint, Sharbaugh claims that Defendants violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101- 12117 (the "ADA"), and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951-63 (the "PHRA"), by discriminating against him on the basis of his disability, particularly his need for a reasonable accommodation, and by retaliating against him for requesting a reasonable accommodation.[2] (ECF No. 16 at 3-6.) Sharbaugh seeks monetary relief, including punitive damages and attorneys' fees, as well as injunctive relief against further violations of the ADA and PHRA. (Id.) This court exercises subject-matter jurisdiction over Sharbaugh's federal claims pursuant to 28 U.S.C. § 1331, and over his state-law claims under the PHRA pursuant to 28 U.S.C. § 1367(a).

For the reasons set forth below, Defendants' motion for summary judgment must be denied. The record is replete with genuine disputes of material fact that preclude entry of judgment as a matter of law in Defendants' favor on any claim.

---

[2] Although, due to Robert Sharbaugh's death in February 2016 (JSMF ¶ D1), the named plaintiff is presently Regina Sharbaugh, the executor of his estate, for ease of reference and increased comprehension, the court's opinion will refer to Robert Sharbaugh, the individual who worked for West Haven and filed this lawsuit, as the plaintiff. The court, therefore, will refer to the plaintiff as Sharbaugh and use male pronouns when referring to the plaintiff in this case, with the understanding that the named plaintiff in this case is actually the female executor of Robert Sharbaugh's estate.

## I.    Factual Background

The factual background is derived from the undisputed evidence of record and the disputed evidence of record viewed in the light most favorable to Sharbaugh, the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).   Other undisputed facts may be discussed in the context of each of Sharbaugh's legal claims where appropriate.

Sharbaugh began his employment for West Haven, a nursing home located in Apollo, Pennsylvania, on October 25, 2010. (JSMF ¶¶ D1.)   West Haven is owned by QLS, which owns a group of nursing homes in Western Pennsylvania. (Id. ¶ D2.)   When Sharbaugh was hired, he was the maintenance supervisor. (JSMF ¶ D4, ¶ P13.)   The maintenance supervisor worked alongside the supervisors of the laundry and housekeeping departments. (JSMF ¶ D4.)   Approximately six months into his term of employment with West Haven, Sharbaugh was promoted to "Environmental Services Director," also referred to as "Environmental Director" in the record, and became responsible for supervising the maintenance supervisor appointed to replace him, the laundry supervisor, and the housekeeping supervisor. (JSMF ¶ D5, ¶¶ P13-14.)   Sharbaugh reported to Ken Tack ("Tack") until Tack retired on December 31, 2013, and then Sharbaugh reported to Michael Ligo ("Ligo"). (JSMF ¶ P16.)

In Sharbaugh's annual performance review, dated December 5, 2013, Tack noted that Sharbaugh's performance was "falling short of [] expectations" because his "job includes physical labor at times [and] we are not seeing it." (JSMF ¶ P20; ECF No. 62-2 at 36.)   Medical records reflect that Sharbaugh visited his orthopedic surgeon five days later, on December 10, 2013, with complaints of left knee pain and swelling, and was told that surgery would be performed later that same week to remove the existing implant in his left knee. (ECF No. 62-2 at 25.)   Sharbaugh immediately informed Defendants that he would require medical leave due to

his own serious health condition, i.e., his knee condition and the related surgery, which was scheduled for December 13, 2013. (JSMF ¶ P21; ECF No. 62-2 at 25, 37.)

Defendants notified Sharbaugh in writing on December 16, 2013, that he was eligible for leave under the Family and Medical Leave Act ("FMLA") and instructed him to return an FMLA Certification Form (the "FMLA Form") to Defendants' Human Resources Director, Gail Roberts ("Roberts"). (ECF No. 62-2 at 37.)  Sharbaugh's completed FMLA Form, which is signed by Sharbaugh's surgeon, indicates that Sharbaugh had surgery on an infected left knee on December 13, 2013, and was scheduled for knee replacement surgery on that same knee on March 7, 2014. (ECF No. 62-2 at 39-42.)  The FMLA Form was received by Roberts on behalf of Defendants on January 8, 2014. (Id. at 39.)  The FMLA Form states that Sharbaugh is unable to perform any job functions due to his condition, and includes the handwritten notation "No Work." (Id. at 40.)  The FMLA Form also indicates that Sharbaugh will be incapacitated for a single continuous period of time, beginning on December 13, 2013 and ending "est. 6-13-14," or approximately three months after Sharbaugh's second knee surgery. (Id. at 41.)  Sharbaugh's surgeon actually released him to work effective July 28, 2014. (JSMF ¶ D25; ECF No. 62-3 at 15.)  Sharbaugh, however, did not return to work at West Haven on that date because his employment had been terminated on March 7, 2014. (JSMF ¶ D22.) On September 30, 2014, Sharbaugh reapplied for employment with West Haven, or several associated nursing homes and personal care facilities, but was informed that "there are no open positions that meet the description of interest indicated on your application." (JSMF ¶¶ P99-100; ECF No. 62-3 at 3-6.)

Sharbaugh's pertinent FMLA leave period began on December 11, 2013. (ECF No. 54 at 70.) Sharbaugh was not paid any salary while on FMLA leave. (JSMF ¶ P65.) The monthly cost to Defendants of the fringe benefits that Sharbaugh was eligible to receive while he was on FMLA leave was approximately $350.00, which consisted of the premium payments for his medical, vision, and short term disability insurances. (ECF No. 62-1 at 33.) According to Defendants' calculations, and due to a 7-day FMLA leave period taken in May 2013, Sharbaugh exhausted his allotted FMLA leave time on February 21, 2014. (JSMF ¶ D6; ECF No. 54 at 70-71, 87; ECF No. 62-2 at 43-44.) Roberts set forth her calculation of Sharbaugh's FMLA leave time in an email to Susie Beardsley ("Beardsley") dated February 12, 2014. (ECF No. 62-2 at 44.) Beardsley is a part owner of QLC and its chief administrative officer. (JSMF ¶ P3; ECF No. 62-2 at 2 (Beardsley depo.) at 9 (lns. 18-25), 10 (lns. 1-22).) Beardsley made decisions for QLC relating to requests for additional leave under the ADA, and was the decisionmaker with respect to Sharbaugh's termination. (JSMF ¶ D19; ECF No. 54 at 17, 22; ECF No. 62-2 at 10 (depo. pgs. 61-62).) Roberts reported to Beardsley and forwarded all human resources-related issues or questions that were not "routine" to Beardsley for ultimate resolution. (ECF No. 54 at 37-38.)

In her February 12, 2014 email, Roberts informed Beardsley about the anticipated date on which Sharbaugh's FMLA leave would exhaust, i.e., February 21, 2014, inaccurately stating that "Robert's 2nd surgery date to redo his knee replacement has not been set as of yet" and noting that "[t]his was a mess last time." (ECF No. 62-2 at 44.) The email attached a draft letter from Roberts to Sharbaugh, that "was originally from [counsel]," which Roberts planned to send to Sharbaugh by February 14, 2014. (Id.) Roberts' February 12, 2014 email opens with the following text: "Here we are again with Robert Sharbaugh (environmental services director)

coming down to the wire for FMLA," a statement that Roberts made because Sharbaugh "had situations before where his FMLA was about to expire, and [Defendants] were about to experience that again." (JSMF ¶¶ P24-25.)    Sharbaugh had taken periods of FMLA leave twice in 2012, and in May 2013 before taking the period of FMLA leave at issue in this case. (JSMF ¶ D6; ECF No. 54 at 69-70.)    Three minutes after Roberts sent the February 12, 2014 email, Beardsley sent the following response: "I think we still need to send him the letter telling him when his FMLA leave exhausts and asking him to convey his intention to return.    That should be standard.    We may need to involve [counsel] again if the response from him (or his daughter) is not standard." (ECF No. 62-2 at 46.)    The record reflects that Sharbaugh's daughter intervened on his behalf when Sharbaugh needed an extension of a prior period of medical leave and Defendants refused to provide it. (JSMF ¶ P26.)

As instructed, Roberts sent a letter to Sharbaugh, dated February 14, 2014, which was drafted mostly by Defendants' counsel. (JSMF ¶¶ P30-31; ECF No. 62-2 at 43.)    Although the letter is dated February 14, 2014, a Friday, it was not received by the U.S. Postal Service until Tuesday, February 18, 2014, at which time it was processed as certified mail with return receipt requested. (JSMF ¶ P37; ECF No. 62-2 at 47.)    The letter was delivered to Sharbaugh on Monday, February 24, 2014. (Id.)    In the letter, Roberts informed Sharbaugh that his FMLA leave will exhaust on February 21, 2014 (the previous Friday) and that absences beyond that date will be "treated in accordance with our FMLA, attendance and other policies" because Sharbaugh had no additional leave or unused accrued earned time off available. (JSMF ¶¶ D8-9; ECF No. 62-2 at 43.)    At the time Sharbaugh received this letter his FMLA leave was already exhausted.    The letter also stated that "we require employees on leave to provide notice of their intent to return to work.    We have not received any indication of your release to return to work

in the foreseeable future.  If you are in or come into possession of any such return-to-work information, please provide it to me immediately." (Id.)

The same day that Sharbaugh received the February 14, 2014 letter, he called his surgeon to inquire about when he could return to work. (JSMF ¶ P38.)  At this point, Sharbaugh was approximately two months post-operative from his first knee surgery, and less than two weeks pre-operative from his second knee surgery. (ECF No. 62-2 at 39.)  Sharbaugh's surgeon told him that the best estimate he could give Sharbaugh was that he could possibly return to light-duty work 2-3 weeks after his second surgery, i.e., March 21-28, 2014, and to full-duty work 4-6 weeks after his second surgery, i.e., April 5-19, 2014. (JSMF ¶¶ D11-14, ¶¶ P38-40.) There is no genuine dispute that Sharbaugh's surgeon presented these dates to Sharbaugh during the phone call as approximations and possibilities, not certainties or assurances, and never reduced these dates to writing. (JSMF ¶¶ D11-14; ¶¶ P39-40.)  There is also no genuine dispute that the FMLA Form, which was received by Defendants in January 2014, reflected that Sharbaugh would have a second knee surgery on March 7, 2014, and would be continuously incapacitated from December 2013 until approximately June 13, 2014. (ECF No. 62-2 at 39-42.)

After Sharbaugh spoke with his surgeon by telephone on February 24, 2014, Sharbaugh called his supervisor, Ligo. (JSMF ¶ D15.)  There is no dispute that Sharbaugh notified Ligo that he intended to return to work after recovering from his second knee surgery. (JSMF ¶ P42.)  Sharbaugh told Ligo that he spoke with his surgeon earlier that day and Sharbaugh relayed the return-to-work dates set forth above to Ligo, making it clear that the dates were estimates. (JSMF ¶ D16, ¶ P41.)  Defendants presently concede that Sharbaugh was making a request for an accommodation during this telephone call, specifically, additional time off to recover from his second knee surgery, even though Roberts, West Haven's Human

Resources Director, testified that, at the time, she did not consider Sharbaugh to have been requesting any accommodation for his disability. (JSMF ¶¶ P4, P5, P8, P71 (Defendants' responses); ECF No. 62-1 at 11 (depo. pg. 55), 14 (depo. pg. 67).)    Ligo told Sharbaugh that he would get back to him. (JSMF ¶ P44.)    Ligo recounted the content of his phone call with Sharbaugh to Roberts. (JSMF ¶ P43.)    Ligo never personally responded to Sharbaugh; Ligo understood that the matter was being "handled through HR" going forward. (JSMF ¶ D17, ¶ P44.)    No one employed by or associated with Defendants called or otherwise contacted Sharbaugh, or anyone associated with Sharbaugh, to follow up on Ligo's conversation with Sharbaugh. (JSMF ¶ P56; ECF No. 62-1 at 12-13 (depo. pgs. 60-61), 15 (depo. pg. 71); ECF No. 62-2 at 10 (depo. pgs. 62-63).)

On February 25, 2014, Sharbaugh sent a letter directly to Roberts in which he reiterated his intent to return to work and his understanding that there were "no plans to terminate my position in my absence." (ECF No. 62-2 at 19.)    The letter sets forth the same light-duty and full-duty return-to-work dates that Sharbaugh informed Ligo about on the telephone the prior day, specifically stating that "[my surgeon] feels I will be able to return to full duty" within six weeks of his second knee surgery and "I may be able to do light duty" sooner than that. (Id.; JSMF ¶ D18.)    Roberts forwarded this letter to Beardsley, by email, on February 27, 2014, with the following message: "Attached please find the letter of response from Robert Sharbaugh regarding the exhaustion of his FMLA.    Should I now send him a warning letter about his absences this week. (2/24, 2/25, 2/26, and 2/27.)" (ECF No. 54 at 86; ECF No. 62-2 at 24.)    After receiving a copy of Sharbaugh's response, Beardsley asked Ligo, by email, if Ligo "assured [Sharbaugh] that he would have as much time off as he needs?" (ECF No. 54 at 86; ECF No. 62-2 at 48.)    After Ligo responded, by email, that "[t]he exact words out of my

mouth where 'we are not filling the position,'" Beardsley asked that a call to "talk about this" be
scheduled for the following week among Roberts, Ligo, and Beardsley. (ECF No. 54 at 85-86.)
Roberts, Ligo, and Beardsley had more than one conversation about Sharbaugh between
February 27, 2014, and March 7, 2014. (JSMF ¶ D20.)    Beardsley consulted with counsel
during this time period about Sharbaugh. (JSMF ¶ P52.)    There is no dispute that Defendants
did not engage in any communication with Sharbaugh during this time period. (ECF No. 62-1 at
12-13 (depo. pgs. 60-61), 15 (depo. pg. 71); ECF No. 62-2 at 10 (depo. pgs. 62-63); JSMF ¶¶
P8-9, P56, P58.)

            On March 7, 2014, Roberts sent a letter to Sharbaugh notifying him that his
employment "has terminated as of today" "because you have not returned to work in the two
weeks since February 21, 2014 (the date your FMLA leave expired)." (JSMF ¶ P66; ECF No.
62-1 at 1 (the "Termination Letter").)    This letter was the first contact that Defendants had with
Sharbaugh since Sharbaugh called Ligo on February 24, 2014, and sent the February 25, 2014
letter to Roberts requesting additional time off work to recover from his knee surgeries.
Between February 24, 2014, and March 7, 2014, no one employed by or associated with
Defendants contacted Sharbaugh or his surgeon's office. (ECF No. 62-1 at 12-13 (depo. pgs.
60-61), 15 (depo. pg. 71); ECF No. 62-2 at 10 (depo. pgs. 62-63); JSMF ¶¶ P8-9, P56, P58.)    In
the Termination Letter, Roberts "address[ed] [Sharbaugh's] letter… of February [25], 2014" and
stated that she confirmed that Sharbaugh was never assured that his job would be held open for
him during his leave of absence. (ECF No. 62-1 at 1.)    Roberts also "note[d] that you have
never discussed your situation with me, West Haven's Human Resources Director, at any time
since my letter of February 14th." (Id.)    After reproducing, in part, the statements from
Sharbaugh's February 25, 2014 letter about his possible light-duty and full-duty return-to-work

dates, the Termination Letter stated "we welcome you to reapply for employment with West Haven when and if you are released for any level of work." (Id.)  The Termination Letter indicated that Sharbaugh's health care coverage would expire on March 31, 2014, not on February 28, 2014, as was "mistakenly stated" in "a separate COBRA letter" that Defendants previously sent to Sharbaugh. (Id.)

Defendants are unable to identify the date on which the decision to terminate Sharbaugh was made, but the undisputed record reflects that the decision was made sometime after February 28, 2014 (a Friday) and before March 7, 2014 (the following Friday). (JSMF ¶¶ P63, P88.)  There is evidence that the decision was made as early as Tuesday, March 4, 2014. On that date, Roberts emailed another West Haven employee that "[Beardsley] and I talked this morning about Robert Sharbaugh, and agree that his insurance coverage should term[inate] February 28, 2014," which Roberts explained during her deposition was the "last period of hours worked by [] Sharbaugh." (JSMF ¶¶ P61-62; ECF No. 62-2 at 49.)  Sharbaugh was on FMLA leave for the entire month of February 2014; he did not actually work any hours during that time, indicating that Roberts' explanation reflects that a decision to terminate Sharbaugh's employment had been made as of March 4, 2014. (ECF No. 54 at 71.)

After receiving the Termination Letter, Sharbaugh called Ligo on March 14, 2014, to ask about his termination and what he could do to get his job back. (JSMF ¶ P91.) Ligo relayed this conversation to Roberts, and in response Roberts sent Sharbaugh a letter, dated March 19, 2014. (JSMF ¶¶ P93-95; ECF No. 62-3 at 1.)  In that letter, Roberts "reiterate[d] [the Termination Letter's] request that you direct all questions to me in writing" and, invited Sharbaugh to "set forth the specific reasons you believe your situation was handled improperly."

(ECF No. 63-2 at 1.)   This letter, like the Termination Letter, although signed by Roberts was drafted by Beardsley, with the assistance of counsel. (JSMF ¶¶ P30-31, P98.)

Beardsley concluded that Sharbaugh's request for additional time off "stopped short of being able to give [Defendants] information that would indicate that his doctor knew when he would be able to return to work." (JSMF ¶ P53.)   Defendants contend that, prior to his termination, Sharbaugh could not provide "definite information" about when he could return to work, and that the information provided by Sharbaugh during his February 24, 2014 conversation with Ligo and in his February 25, 2014 letter to Roberts was indefinite and uncertain, and "conflicted with" the return-to-work information provided on Sharbaugh's FMLA Form. (JSMF ¶¶ P33-36 (Defendants' responses).)   Defendants explicitly dispute that the FLMA Form provided them with "definite information as to the duration of [Sharbaugh's] condition." (Id.)

The position of Environmental Services Director was eliminated after Sharbaugh was terminated. (JSMF ¶ P85.)   Although there were discussions after Sharbaugh submitted his FMLA Form about eliminating the position "if [Sharbaugh] was unable to return from his leave," the decision was not made to eliminate the position until after Sharbaugh was terminated. (JSMF ¶ P86; ECF No. 62-2 at 9 (depo. pg. 54).)   Defendants acknowledge that there was no need for Sharbaugh to return to work upon expiration of his FMLA leave, or on any particular date thereafter, because Sharbaugh's position was deemed superfluous and unnecessary and his duties were permanently redistributed to existing employees. (JSMF ¶ P59.)   According to Defendants, their termination of Sharbaugh was proper because "it is an undue burden to require an employer to keep open a position it would have otherwise eliminated." (JSMF ¶ D21, ¶¶ P65, P85.)

## II.     Procedural History

Sharbaugh filed a charge of disability discrimination and retaliation with both the

U.S. Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human

Relations Commission ("PHRC") in April 2014. (ECF No. 62-3 ¶ 2a.)     Sharbaugh timely filed

the instant lawsuit after receiving a right to sue letter from the EEOC, and filed a second

amended complaint after a year had lapsed since Sharbaugh filed his PHRC complaint. (Id. ¶¶

2b-d.)    In his second amended complaint, Sharbaugh asserts a claim for disability

discrimination and a claim for disability retaliation under both the ADA and the PHRA. (ECF

No. 62-3.)    Specifically, Sharbaugh claims that Defendants fired him "because of his

disability," and "in retaliation for requesting a reasonable accommodation." 42 U.S.C. §§

12112(a) and (b)(5)(B), 12203(b).

## III.     Summary Judgment Standards

Federal Rule of Civil Procedure 56 provides in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary
> Judgment.**     A party may move for summary judgment,
> identifying each claim or defense – or the part of each claim or
> defense – on which summary judgment is sought.     The court shall
> grant summary judgment if the movant shows that there is no
> genuine dispute as to any material fact and the movant is entitled to
> judgment as a matter of law.     The court should state on the record
> the reasons for granting or denying the motion.
>
> > **…**
>
> **(c)  Procedures.**
>
> **(1)  *Supporting Factual Positions*.**  A party asserting that a fact
> cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made for

> purposes of the motion only), admissions, interrogatory answers, or
> other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produced admissible evidence to support the fact.

FED. R. CIV. P. 56(a), (c)(1)(A), (B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the
> entry of summary judgment, after adequate time for discovery and
> upon motion, against a party who fails to make a showing
> sufficient to establish the existence of an element essential to that
> party's case, and on which that party will bear the burden of proof
> at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S.

317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 248 (1986); see Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007)

("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence,

could rationally find in favor of the non-moving party in light of his burden of proof." (citing

Celotex Corp., 477 U.S. at 322-26; Liberty Lobby, 477 U.S. at 248-52)).

> [W]hen the moving party has carried its burden under Rule 56(c),
> its opponent must do more than simply show that there is some
> metaphysical doubt as to the material facts … Where the record
> taken as a whole could not lead a rational trier of fact to find for
> the nonmoving party, there is no genuine issue for trial.

Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts in favor of the nonmoving party. Doe v. Cty. of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001); Woodside v. Sch. Dist. of Phila. Bd. Of Educ., 248 F.3d 129, 130 (3d Cir. 2001); Heller v. Shaw Indus., Inc., 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 643 n.3 (3d Cir. 1998).

When the nonmoving party bears the burden of proof at trial, the moving party may discharge its burden by pointing out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the moving party has made this showing, the burden then shifts to the nonmoving party, who cannot simply rest on the allegations in the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec., 475 U.S. at 586. Summary judgment is proper in cases where the nonmoving party's evidence in opposition is "merely colorable" or "not significantly probative." Liberty Lobby, 477 U.S. at 249-50.

## IV. The ADA Amendments Act of 2008

The ADA provides that no employer "shall discriminate against a qualified individual on the basis of disability in regard to… discharge of employees… and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The PHRA includes similar prohibitions on discrimination "because of" an employee's disability. 43 Pa. Cons. Stat. § 955(a). Sharbaugh asserts claims under both statutes in this case.

14

The ADA Amendments Act of 2008 ("ADAAA"), Pub.L. 110–325, 122 Stat. 3553 (2008), became effective on January 1, 2009, and applies to this case because Sharbaugh was terminated on March 7, 2014. (JSMF ¶ P66; ECF No. 62-1 at 1.)  The ADAAA made two significant changes to the ADA; first, the ADAAA expanded the definition of the term disability, which had been narrowed by Supreme Court precedent; and second, the ADAAA changed the language of § 12112(a) to prohibit discrimination against a qualified individual "on the basis of" a disability, instead of "because of" a disability. Pub.L. No. 110–325, §§ 2(b)(1)-(6), 3(2)(a), § 4(a), 122 Stat. 3553, 3555; Kravits v. Shinseki, No. 10–861, 2012 WL 604169, at *6 (W.D. Pa. Feb. 24, 2012).  The first change made it easier for an employee to prove that he or she was "a disabled person" under the ADA.   The second change arguably replaced the more narrow determinative factor, or but-for, causation test with the less-exacting and more plaintiff-friendly motivating factor test. Graesslin v. Duluth Trading Co., No. 14-359, 2015 WL 2449588, at *7 n.8 (W.D. Wis. May 22, 2015) (citing Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 961-62 (7th Cir. 2010), and noting that the Court of Appeals for the Seventh Circuit has not yet decided whether the ADAAA changed the traditional "but-for" standard for causation applicable to ADA claims); Lewis v. Humboldt Acquisition Corp., Inc., 681 F.3d 312 (6th Cir. 2012) (refusing to import the motivating factor test, applicable to Title VII discrimination cases, 42 U.S.C. § 2000e-2(m), into the ADA, even after the ADAAA changed the language of § 12112(a)); Whalen v. City of Syracuse, No. 11-0794, 2014 WL 3529976, at *8 (N.D.N.Y. July 15, 2014) (requiring a plaintiff to demonstrate that her disability was "in the very least, 'a motivating factor'… if not a 'but-for' cause."); Siring v. Oregon St. Bd. of Higher Educ., 977 F.Supp.2d 1058, 1062-63 (D. Or. 2013) (finding that the ADAAA confirms that the motivating factor test, and not the determinative factor test, applies to disability discrimination claims).

The Pennsylvania legislature has failed to enact similar amendments to the PHRA, leading some courts to question whether claims made under the ADA and the PHRA can still be considered coterminous. Kieffer v. CPR Restoration & Cleaning Serv., LLC, No. 15-3048, 2016 WL 4119842, at *8 (E.D. Pa. Aug. 3, 2016); Canfield v. Movie Tavern, Inc., No. 13–03484, 2013 WL 6506320, *5 (E.D. Pa. Dec. 12, 2013); Szarawara v. Cty. of Montgomery, No. 12–5714, 2013 WL 3230691, at *2 (E.D. Pa. June 27, 2013); Deserne v. Madlyn & Leonard Abramson Ctr. for Jewish Life, Inc., No. 10–03694, 2012 WL 1758187, *3 n.3 (E.D. Pa. May 17, 2012). In this case, however, Pennsylvania's failure to amend the PHRA has no effect on the issues raised in Defendants' motion for summary judgment. There is no dispute that Sharbaugh was disabled at the time of Defendants' employment decision. (JSMF ¶ P17.) The first change made by the ADAAA, therefore, has no impact on the instant decision. Likewise, disposition of Defendants' motion for summary judgment does not turn upon whether the motivating factor test or the determinative factor/but-for test applies to Sharbaugh's claims. The second change made by the ADAAA, therefore, has no impact on the instant decision.

Because neither of the changes made by the ADAAA impact this court's analysis or disposition of Defendants' motion for summary judgment, the court need not distinguish between the PHRA and the ADA in this opinion. Gera v. Cty. of Schuylkill, 617 F. App'x 144, 147 (3d Cir. 2015) (citing Rinehimer v. Cemcolift, Inc., 292 F.3d 375, 382 (3d Cir. 2002) and finding that where ADA discrimination and retaliation claims fail, PHRA claims also fail); Macfarlan v. Ivy Hill SNK, LLC, 675 F.3d 266, 274 (3d Cir. 2012); Eshelman v. Agere Sys., Inc., 554 F.3d 426, 433 n.3 (3d Cir. 2009); Wilkerson v. New Media Tech. Charter Sch., Inc., 522 F.3d 315, 318-19 (3d Cir. 2008); Williams v. Phila. House. Auth. Police Dep't, 380 F.3d 751, 761 (3d Cir. 2004); Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997); Lescoe

v Pennsylvania Dept. of Corrections, 464 F.App'x 50, 52 n.6 (3d Cir. 2012); Flory v. Pinnacle Health Hospitals, 346 F.App'x 872, 875 n.2 (3d Cir. 2009).

## V.  Failure to Accommodate Claims (Counts I and III)

Disability discrimination under the ADA encompasses two kinds of claims: disparate treatment and failure to accommodate.   These are distinct claims and a different analysis applies to each.   Disparate treatment claims are governed by the familiar shifting-burden scheme set out in McDonnell Douglas pursuant to which, after an employee establishes all the elements of a prima facie case, an employer must articulate a legitimate nondiscriminatory reason for its conduct and the employee must present evidence that the proffered reason is pretextual. See Bolden v. Magee Women's Hosp., No. 05-1063, 2007 WL 1228479, at *4-6 (E.D. Pa. Apr. 24, 2007); Walton v. Mental Health Assn. of Southeastern Pa., No. 96-5682, 1997 WL 717053, at *10 (E.D. Pa. Nov. 17, 1997); Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 263–64 (1st Cir. 1999).   Failure to accommodate claims do not require that an employer's action be motivated by a discriminatory animus directed at the disability and, therefore, the McDonnell Douglas test does not apply. Id.; Ferreri v. Mac Motors, Inc., 138 F.Supp.2d 645, 651 n.1 (E.D. Pa. 2001).

In their opening brief, Defendants seek judgment as a matter of law on a disparate treatment claim. (ECF No. 55 at 19-31.)   Sharbaugh, however, is only pursuing a failure to accommodate claim in this case.   Sharbaugh does not assert that he was treated differently than other employees because he was disabled; he asserts that he was not provided a reasonable accommodation when he requested one and was fired in retaliation for asking. (ECF No. 59.) Defendants' arguments about Sharbaugh's need to prove that he was replaced and that the job was kept open after his termination in order to establish a prima facie case of disparate treatment

are, therefore, inapposite. (ECF No. 55 at 21, 25-26.)    The court will nevertheless consider the evidence and arguments relied upon by Defendants in support of their motion for judgment as a matter of law on the disparate treatment claim where they are otherwise relevant to the failure to accommodate and retaliation claims that Sharbaugh is asserting.

## A. Legal Principles

### 1. Disability Discrimination – *Prima Facie* Case

To qualify for relief under the ADA, an employee must demonstrate that: (1) he is a "disabled person"[3] within the meaning of the ADA; (2) he is "otherwise qualified" to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he suffered an otherwise adverse employment decision as a result of disability discrimination. Macfarlan, 675 F.3d at 274; Hohider v. United Parcel Service, Inc., 574 F.3d 169, 186 (3d Cir. 2009); Wishkin v. Potter, 476 F.3d 180, 184-85 (3d Cir. 2007); Williams, 380 F.3d at 761; Shiring v. Runyon, 91 F.3d 827, 831 (3d Cir. 1996).

A two-part test is used to determine whether someone is "otherwise qualified" for the job. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 611 (3d Cir. 2006) (citing 29 C.F.R. § 1630.2(n)).    First, a court must consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." Kieffer v. CPR Restoration & Cleaning Serv., LLC, No. 15-3048, 2016 WL 4119842, at *8 (E.D. Pa. Aug. 3, 2016) (citing Gaul v. Lucent Techs. Inc., 134 F.3d 576, 580 (3d Cir. 1998)).    Second, the court must consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id.

---

[3] This element is not in dispute in this case, JSMF ¶ P17, and need not be addressed further.

The determination whether an individual with a disability is "otherwise qualified" is made at the time of the employment decision, and the burden is on the employee to prove that a reasonable accommodation would have enabled him to perform the essential functions of his job in the near future. Gardner, 636 F.App'x at 83-84; Taylor, 184 F.3d at 317. The question whether a proposed accommodation is reasonable is a question of fact. Buskirk v. Apollo Metals, 307 F.3d 160, 170 (3d Cir. 2002); Yanoski, 2016 WL 1600860, at *15 (citing Skerski, 257 F.3d at 286); Hofacker, 2016 WL 1383715, *4.

If an accommodation is needed in order to render the employee "otherwise qualified," the employee bears the burden of proving that an accommodation was possible, i.e., that the costs of the accommodation would not have clearly exceeded its benefits. Gardner v. Sch. Dist. of Phila., 636 F.App'x 79, 83-84 (3d Cir. 2015) (citing Walton v. Mental Health Ass'n of Southeast Pa., 168 F.3d 661, 670 (3d Cir. 1999) and Skerski, 257 F.3d at 284); Turner v. Hershey Chocolate USA, 440 F.3d 604, 614 (3d Cir. 2006); Skerski v. Time Warner Cable Co., 257 F.3d 273, 284 (3d Cir. 2001); Taylor, 184 F.3d at 319-20; Gaul v. Lucent Tech., Inc., 134 F.3d 576, 580-81 (3d Cir. 1998); Yanoski v. Silgan White Cap Americas, LLC, No. 14-1862, 2015 WL 1660860, at *10 (M.D. Pa. Apr. 27, 2016) (citing Walton, 168 F.3d at 670); Model Civil Jury Instructions 3rd Cir. at § 9.1.3 (2015). The employer must rebut that showing by demonstrating that the accommodation would have caused an undue hardship because it would have been costly, difficult, or disruptive. Id.

## 2. **Failure to Accommodate**

Failure to accommodate claims arise from the employer's obligation to make reasonable accommodations for an employee's disabilities. Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). An employer discriminates when it does not make reasonable accommodations to the physical or mental limitations of an employee, "unless the [employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." Twillie v. Erie Sch. Dist., 575 F.App'x 28, 32 (3d Cir. 2014) (citing 42 U.S.C. § 12112(b)(5)(A)); see Williams v. Phila. Hous. Auth. Police Dept., 380 F.3d 751, 761 (3d Cir. 2004) (internal citations omitted); Hofacker v. Wells Fargo Bank Nat'l Ass'n, No. 16-517, 2016 WL 1383715, *4 (E.D. Pa. Apr. 7, 2016). An employer's failure to reasonably accommodate the disabilities of an otherwise qualified employee constitutes an adverse employment action under the third element of the prima facie case of generic disability discrimination. 42 U.S.C. § 12112.

### a. **The *Prima Facie* Case**

The elements specific to the failure to accommodate disability discrimination claim are: (1) the employee had a disability; (2) the employer knew of that disability; (3) the employee can perform the essential functions of his job with a reasonable accommodation; and (4) the employer failed to provide an accommodation. Boice v. Se. Pa. Transp. Auth., No. 05-4772, 2007 WL 2916188, at *12 (E.D. Pa. Oct. 5, 2007); Bolden, 2007 WL 1228479, at *4-6; Johnson v. McGraw-Hill Companies, 451 F.Supp.2d 681, 700-01 (W.D. Pa. 2006).

#### b. **The Interactive Process**

Making reasonable accommodations "includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith under what has been termed a duty to engage in the interactive process." Williams, 380 F.3d at 761.   Once an employer is aware of the employee's disability and desire for accommodations, it is the employer's responsibility to request additional information that the employer believes it needs in order to devise a reasonable accommodation. Allen v. Verizon Pa., Inc., 418 F.Supp.2d 617, 622-23 (M.D. Pa. 2005) (citing Taylor, 184 F.3d at 315).

The interactive process is aimed at determining what reasonable accommodations, if any, can address the employee's disability. 29 C.F.R. § 1630.2(o)(3); Mengine v. Runyon, 114 F.3d 415, 416 (3d Cir. 1997).   The interactive process requires "a great deal of communication between the employee and the employer," as both parties "bear responsibility for determining what accommodation is necessary." Gardner, 636 F.App'x at 84 (citing Taylor, 184 F.3d at 312); Yanoski, 2016 WL 1660860, at *10 (citing Taylor, 184 F.3d at 312).   "Employers can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered employee's request, and offer and discuss available alternatives when the request is too burdensome." Taylor, 184 F.3d at 317.   A failure to communicate, either by way of initiation or response, may be an act of bad faith. Id. at 312.

To show that an employer breached its duty to engage in the interactive process, the employee must demonstrate that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith. Tourtellotte v. Eli Lilly & Co., 636 F.App'x 831, 849 (3d Cir. 2016); Stadtmiller v. UPMC Health Plan, Inc., 491 F.App'x 334, 336 (3d Cir. 2012); Colwell v. Rite Aid Corp., 602 F.3d 495, 503-04 (3d Cir. 2010); Armstrong v. Burdette Tomlin Mem. Hosp., 438 F.3d 240, 246 (3d Cir. 2006); Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 330-31 (3d Cir. 2003).    Failure to engage in the interactive process is not an independent violation of the ADA; it is a way in which an employee can demonstrate that an employer breached its duty to provide reasonable accommodations. Colwell, 602 F.3d at 504 (citing Williams, 380 F.3d at 772 and Taylor, 184 F.3d at 317).    Even when an employer refuses to engage in the interactive process, if the employee cannot establish that he could have been reasonably accommodated, that employee is not entitled to relief under the ADA. Donahue v. Consolidated Rail Corp., 224 F.3d 226, 234-35 (3d Cir. 2000); Taylor, 184 F.3d at 317; Mengine, 114 F.3d at 420.

            If an employee requests a period of leave as a reasonable accommodation, the employer cannot merely dismiss that request out of hand as unreasonable. Sowell v. Kelly Services, Inc., 139 F.Supp.3d 684, 701 (E.D. Pa. 2015).    Instead, the interactive process in these circumstances must focus upon whether the leave being requested is reasonable under the circumstances. Id.; Dogmanits v. Capital Blue Cross, 413 F.Supp.2d 452, 460 (W.D. Pa. 2005) (citing Conoshenti, 364 F.3d at 151).    A leave of absence for medical treatment may be a reasonable accommodation under the ADA if it is temporary and will enable the employee to

perform his essential job functions in the near future. Gardner, 636 F.App'x at 84 (citing

Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 151 (3d Cir. 2004)); Sowell, 139

F.Supp.3d at 700-01 (citing decisions).    An indefinite and open-ended leave of absence is not a

reasonable accommodation. Fogleman v. Greater Hazelton Health Alliance, 122 F.App'x 581,

585 (3d Cir. 2004).

## B. Discussion

### 1. The Parties' Arguments

The parties' briefing reveals that the primary issue raised by Defendants' motion

for summary judgment on Sharbaugh's failure to accommodate claim is whether a reasonable

jury could find that Sharbaugh's request for additional time off work was a reasonable

accommodation.    The parties also dispute whether Defendants fulfilled their obligation to

engage in the interactive process with Sharbaugh.

According to Defendants, Sharbaugh's request cannot qualify as a reasonable

accommodation because Sharbaugh asked for an indefinite and open-ended leave of absence,

which can never be a reasonable accommodation, as a matter of law. (ECF No. 55 at 10-18,

23-25.)    Defendants contend that the record establishes that they fulfilled their duty to engage in

the interactive process, thus further mandating entry of judgment as a matter of law in their

favor. (Id. at 18-19.)

Sharbaugh argues that entry of judgment in Defendants' favor is improper

because his leave request, which was for a finite period of time, was a reasonable

accommodation and Defendants identified no evidence that his requested accommodation would

have caused Defendants an undue hardship. (ECF No. 59 at 5-12.)    Sharbaugh additionally

contends that Defendants' complete failure to engage in the interactive process following his

request for an accommodation precludes entry of judgment as a matter of law in Defendants' favor. (Id. at 17-19.)

### 2. **Analysis**

There are many elements of Sharbaugh's failure to accommodate claim that are not disputed.    Defendants do not dispute for purposes of summary judgment that Sharbaugh was a disabled person within the meaning of the ADA and that they had notice of his disability. There is no genuine dispute on this record that Sharbaugh requested an accommodation, i.e., more time off work to recover from knee surgery, and that Defendants refused to provide that, or any other, accommodation to Sharbaugh.    The dispositive issues raised by Defendants' motion for summary judgment with respect to Sharbaugh's failure to accommodate claim are whether: (1) Sharbaugh's request for additional time off work qualifies as a reasonable accommodation, and (2) Defendants failed to make a good faith effort to assist Sharbaugh with respect to his accommodation request.[4]

#### a. **Reasonable Accommodation**

There is no dispute that Sharbaugh met the first part of the two-part test used to determine whether someone is "otherwise qualified" for the job, i.e., he possessed the requisite skills and background to hold the position of Environmental Services Director. Turner, 440 F.3d at 611; Kieffer, 2016 WL 4119842, at *8.    There is a dispute, however, with respect to whether Sharbaugh could perform the essential functions of his job with a reasonable accommodation, which is the second part of that test. Id.    The reasonableness of Sharbaugh's requested

---

[4]  Defendants' arguments do not always follow the structure of the court's analysis.    It is not relevant for purposes of summary judgment, however, whether Defendants' arguments establish an undue burden on Defendants, or prove that Sharbaugh's requested accommodation is unreasonable, or qualify as a legitimate nondiscriminatory reason for Sharbaugh's termination. The court's analysis and rulings remain the same.    Regardless of the characterization that Defendants give to their positions, the court considered each of their arguments where appropriate in assessing whether Defendants are entitled to judgment as a matter of law.

accommodation is also pertinent to the third element of the four-factor failure to accommodate prima facie case, and to the fourth element of the four-part test used to determine whether an employer failed to engage in the interactive process. Tourtellotte, 636 F.App'x at 849; Stadtmiller, 491 F.App'x at 336; Colwell, 602 F.3d at 503-04; Armstrong, 438 F.3d at 246; Conneen, 334 F.3d at 330-31; Boice, 2007 WL 2916188, at *12; Bolden, 2007 WL 1228479, at *4-6; Johnson, 451 F.Supp.2d at 700-01.   Regardless how the factor relates to the various multi-element tests applicable to Sharbaugh's failure to accommodate claim, the dispositive fact remains that if Sharbaugh could not be reasonably accommodated, then no reasonable jury could find in his favor on his failure to accommodate claim and the court would be required to grant Defendants' motion for summary judgment. Donahue, 224 F.3d at 234-35; Taylor, 184 F.3d at 317; Mengine, 114 F.3d at 420.

In this case, only one accommodation is at issue, i.e., additional time off work to recover from knee surgery.   Under the applicable case law, the dispositive question is whether this accommodation was indefinite and open-ended, or temporary and capable of rendering Sharbaugh able to perform the essential functions of his job in the near future. Gardner, 636 F.App'x at 84; Fogleman, 122 F.App'x at 585; Sowell, 139 F.Supp.3d at 700-01.   For the reasons that follow, the court concludes that a reasonable jury could find that Sharbaugh's requested accommodation falls into the latter category, making entry of judgment as a matter of law in Defendants' favor on the failure to accommodate claim inappropriate.

#### i. **Accommodation was Possible and not an Undue Burden on Defendants**

Sharbaugh has a preliminary, threshold obligation to establish that additional time off work was a possible accommodation, from a cost-benefit perspective. Turner, 440 F.3d at 614; Skerski, 257 F.3d at 284; Taylor, 184 F.3d at 319-20; Yanoski, 2015 WL 1660860, at *10; Model Civil Jury Instructions 3rd Cir. at § 9.1.3 (2015). The record reflects that the costs to Defendants of allowing Sharbaugh to take more time off were minimal. Sharbaugh was not paid any salary while on FMLA leave, and there is no evidence that he would have been paid a salary if his period of leave was extended. (JSMF ¶ P65.) Sharbaugh's insurance premiums, which the court presumes for purposes of summary judgment Defendants paid while Sharbaugh was on FMLA leave, and would have continued to pay if he was granted additional unpaid leave, were less than $350 per month. (ECF No. 62-1 at 33.) There is no evidence that Defendants incurred any cost, by way of overtime wages or temporary workers, to ensure that Sharbaugh's job functions were performed in his absence. Walton, 168 F.3d at 671 (employer had to hire a replacement worker); Nolan, 2009 WL 3536628, at *11-12 (employee's absence resulted in loss of clinical capacity and adversely affected staff morale). To the contrary, Defendants repeatedly point out in their summary judgment papers that Sharbaugh's job duties were permanently distributed to other employees after he was terminated because his job was deemed superfluous and an unnecessary "extra layer of management." (JSMF ¶¶ D5, D21; ¶¶ P59, 85.) Under the circumstances, Sharbaugh meets his preliminary obligation to show that the costs of his requested accommodation would not have clearly exceeded the benefits of it, and therefore, that the requested accommodation was possible. Turner, 440 F.3d at 614; Skerski, 257 F.3d at 284; Taylor, 184 F.3d at 319-20; Yanoski, 2015 WL 1660860, at *10; Model Civil Jury Instructions 3rd Cir. at § 9.1.3 (2015).

Defendants can rebut Sharbaugh's preliminary showing with evidence that the requested accommodation would have imposed an undue hardship upon them in terms of cost, difficulty, or disruption. Id. Defendants fail to rebut this preliminary showing. Defendants' only argument with respect to undue hardship is a conclusory assertion, in their reply brief, that being forced to hold Sharbaugh's position open is an undue hardship, as a matter of law, and renders Sharbaugh's requested accommodation unreasonable. (ECF No. 64 at 2, 10-11.) Defendants cite two decisions in support of this claim: Mengine v. Runyon, 114 F.3d 415 (3d Cir. 1997), and Moore v. CVS Rx Services, Inc., 142 F.Supp.3d 321 (M.D. Pa. Oct. 30, 2015).

In Mengine, an employee sought to be reassigned to a different position after hip surgery rendered him unable to perform the prolonged walking and substantial lifting required of a letter carrier for the United States Postal Service. Mengine, 114 F.3d at 416, 418. The court of appeals, in assessing whether reassignment was a reasonable accommodation, acknowledged that the employer was not required to create a new position for the plaintiff, but noted that the employer might, in certain circumstances, be required to convert a temporary position into a permanent position in order to accommodate an employee's disabilities. Id. at 418-19. The decision does not consider whether holding a position open while an employee is absent from work is an undue hardship, and, therefore, cannot advance Defendants' undue hardship argument.

Similarly, Moore, which is not controlling precedent, concerned a disabled employee's request that she be reassigned to an existing light-duty position or to a newly-created position in which she could avoid "run-ins with other people during her bout of postpartum depression." Moore, 142 F.Supp.3d at 340-41. Moore does not assess the hardship related to requiring an employer to hold a position open while an employee is on medical leave, and

likewise cannot advance Defendants' undue hardship argument. Defendants' argument that they would have suffered undue hardship as a matter of law if Sharbaugh was given additional time off work because Defendants would have been forced to hold his position open is not supported by the legal authorities to which they cite.

Aside from the lack of legal authority in support of their position, Defendants offer no evidence establishing that holding Sharbaugh's position open would have been costly, difficult, or disruptive to them. Defendants, instead, ask the court to presume that holding Sharbaugh's position open would have been an undue hardship. The court, however, cannot make those assumptions at the summary judgment stage. Based upon the record, the court can discern no cost, difficulty, or disruption caused by granting Sharbaugh additional time off work. The presumed cost of $350 per month to pay Sharbaugh's insurance premiums does not, on its face, appear to be significant to Defendants, which the record reflects own at least thirteen nursing homes and related facilities. (ECF No. 62-3 at 3.) Defendants submitted no evidence that this cost was significant to them. Sharbaugh's absence from work could not have caused operational difficulties or disruptions because the record reflects that Defendants considered Sharbaugh's position to be unnecessary and they redistributed his duties to existing employees. (JSMF ¶¶ D5, D21; ¶¶ P59, 85.) The court concludes that Defendants failed to rebut Sharbaugh's preliminary showing that the requested accommodation was possible. Defendants did not point to any evidence establishing that providing Sharbaugh additional time off work would have imposed an undue burden on them.

### ii. **Requested Accommodation was not Unreasonable as a Matter of Law**

Sharbaugh's requested accommodation must nevertheless be reasonable in order to make Defendants' failure to provide it actionable. In order for this court to grant Defendants' summary judgment motion on this claim, the record would have to reflect that no reasonable jury could find that Sharbaugh's requested accommodation was reasonable. The law and the facts, however, do not support the conclusion that Sharbaugh's requested accommodation was unreasonable as a matter of law, making referral of this question to a jury necessary.

A leave of absence can be a reasonable accommodation under the ADA if it would enable the employee to perform his essential job functions in the near future. Fogleman, 122 F. App'x at 585. Whether additional unpaid leave supplementing regular sick and personal days qualifies as a reasonable accommodation depends upon the facts of each case. Walton, 168 F.3d at 671.

Defendants contend that Sharbaugh's request for additional time off work cannot be reasonable, as a matter of law, for two reasons: (1) a request for an indefinite, open-ended leave of absence never qualifies as a reasonable accommodation; and (2) an employer is not obligated to hold an absent employee's job indefinitely open. (ECF No. 55 at 11-18, 25-27.) The court is cognizant throughout this analysis that whether a proposed accommodation is reasonable is a question of fact and, therefore, can be resolved in Defendants' favor on summary judgment only if no reasonable jury could find that Sharbaugh's request for additional time off work was reasonable. Buskirk, 307 F.3d at 170; Yanoski, 2016 WL 1600860, at *15 (citing Skerski, 257 F.3d at 286); Hofacker, 2016 WL 1383715, at *4.

### (a) Request for an Indefinite Leave of Absence

According to Defendants, because a request for an indefinite, open-ended leave of absence never qualifies as a reasonable accommodation, Fogleman, 122 F.App'x at 585, and because Sharbaugh made a "request [] for ongoing, uncertain leave with no indicia of any return to work in the short term" and no "definitive return date," no reasonable jury could find that Sharbaugh requested a reasonable accommodation. (ECF No. 55 at 13, 16.)   The factual record in this case does not support Defendants' characterization of Sharbaugh's request, and at the very least raises genuine disputes of material fact about the nature of Sharbaugh's request that preclude summary judgment.   In addition, the legal authorities relied upon by Defendants are readily distinguishable from the facts of this case.

There is no present dispute that when Sharbaugh spoke with Ligo on February 24, 2014, and wrote to Roberts the following day, Sharbaugh's surgeon could only speculate that Sharbaugh may feel well enough to return to work, in some capacity, 2-6 weeks after his March 7, 2014 surgery. (ECF No. 62-2 at 19; JSMF ¶¶ D11-16, D18, ¶¶ P39-41.)   After Ligo relayed his conversation with Sharbaugh to Roberts, who relayed it, with Sharbaugh's February 25, 2014 letter, to Beardsley, who discussed it with counsel, Defendants concluded that Sharbaugh's request "stopped short of being able to give [Defendants] information that would indicate that his doctor knew when he would be able to return to work." (JSMF ¶¶ D15-16, D18,D 20; ¶¶ P41-43, P52, P66.)   Based upon this alleged deficiency in Sharbaugh's request, Defendants immediately terminated Sharbaugh's employment. (JSMF ¶ P53.)

Sharbaugh's February 24, 2014 conversation with Ligo and February 25, 2014 letter to Roberts, however, were not the only information that Defendants were given about Sharbaugh's medical condition, anticipated recovery period, and return-to-work date. Sharbaugh provided a certified FMLA Form to Defendants at the inception of his FMLA leave. (ECF No. 62-2 at 39-42.)    On the FMLA Form, Sharbaugh's surgeon estimated that Sharbaugh's period of incapacity would end around June 13, 2014, i.e., approximately 13 weeks after Sharbaugh's second knee surgery. (ECF No. 62-2 at 41.)    In their briefing, Defendants utterly ignore this critical piece of evidence, instead characterizing the February phone call and letter as the only information that Sharbaugh provided them about how much recovery time he would need after his second knee surgery. (ECF No. 55 at 10-15.)    The FMLA Form was the only certified communication that Defendants had from Sharbaugh's surgeon, and it included an estimated return-to-work date of June 13, 2014. (ECF No. 62-2 at 39-42.)    There is no dispute that Sharbaugh's surgeon did not and never could guarantee the precise day on which Sharbaugh could return to work, whether on that form or during Sharbaugh's February 24, 2014 conversation with him.    That, however, is not unusual and does not automatically render Sharbaugh's request for a leave of absence open-ended and indefinite under the facts of this case.

Sharbaugh's request for time off from work was undisputedly tied to his need to undergo, and recover from, two surgeries on his left knee. (Id.)    There is no dispute that when Sharbaugh began his FMLA leave in December 2013, Defendants knew that he would have two knee surgeries, one in December 2013 and one in March 2014, and would be incapacitated between the two, and for several months after the second. (Id.)    When Defendants received the FMLA Form in January 2014, they therefore knew that Sharbaugh would not be able to return to work before his period of FMLA leave expired in February 2014.    There is no dispute that

Defendants were notified that Sharbaugh was expected to recover from the surgeries, and when he did recover, he would return to work. (Id.; JSMF ¶ P42.)   Sharbaugh's surgeon provided estimates and predictions about the amount of time Sharbaugh would need to recover from the second knee surgery, ranging from 2-6 weeks (uncertified) to an estimated 13 weeks (certified). (ECF No. 62-2 at 39-42; JSMF ¶¶ D11-14, ¶¶ P38-40.)   No medical professional can foresee the exact day on which a patient will be recovered.   No medical professional can know whether there will be complications or delays with a patient's recovery, especially before surgery is even performed.   That, however, does not render Sharbaugh's leave request indefinite and open-ended, as a matter of law.   A comparison to several decisions relied upon by Defendants in support of their argument that Sharbaugh's request was indefinite and open-ended illustrates this precise fact.

For example, Defendants point out that this court, in Johnson v. Community College of Allegheny County, 566 F.Supp.2d 405 (W.D. Pa. 2008), held that plaintiff's request for an extended leave was not a reasonable accommodation. (ECF No. 55 at 13.)   In that case, however, Johnson, whom this court held was not a "disabled person" for purposes of establishing a prima facie case, wrote to her employer "requesting an extension of [her] current leave" after being absent from work for four months "due to job related stress." Johnson, 566 F.Supp.2d at 422-24; Johnson v. Community College of Allegheny Cty., No. 05-867, ECF No. 75-83 (W.D. Pa.).   The record reflected that Johnson informed her employer that the leave would be for an "extended" period of time and was for the purpose of undergoing "a medical evaluation," even though Johnson had already been on medical leave for this same "stress disorder" for four months. Johnson, 566 F.Supp.2d at 445.   Johnson provided no estimates from a medical professional about the amount of time that she would need to recover from her condition. Id.

There was no evidence that Johnson explained to her employer how an additional period of leave would render her able to recover from her condition and return to work. Id. The facts of Johnson do not reflect any certainty with respect to the duration of the period of leave requested, or of the likelihood that the leave would enable Johnson to recover from a medical event and return to work. In contrast, in this case, there is no dispute that Sharbaugh required leave in order to recover from knee surgery, and provided an approximate recovery date to Defendants at the outset of his leave.

               In Nolan v. Shinseki, No. 07-813, 2009 WL 3536628 (W.D. Pa. Oct. 30, 2009), another decision cited by Defendants, the employee was on medical leave due to foot surgery, and requested additional time off when a prior period of leave was set to expire; a factual circumstance that appears on its face to be more aligned with Sharbaugh's situation. (ECF No. 55 at 16.) The court found that the request for more time off work was indefinite and unreasonable as matter of law. Nolan, 2009 WL 3536628, at *16-17. In Nolan, however, the employee suffered from chronic stress fractures in her feet and ankles, in addition to other medical conditions, and after being absent from work for a year and a half, acknowledged that she still had "no understanding" and "no idea" when she could return to work. Id. at *4-5, *8, *14. The record in Nolan established that, in fact, the employee was never able to return to work. Id. Furthermore, the employer produced evidence that Nolan's absence from work resulted in a "loss of one-fourth of [the] clinical capacity" of its drug and alcohol treatment program and was having a persistent negative impact on staff morale. Id. at *11-12. These facts are in stark contrast to the facts of the instant case. Here, Sharbaugh, at the beginning of his leave, informed Defendants that he could return to work once he healed from the second surgery on his knee, and was, in fact, cleared to return to work less than 8 months after his period of leave began. Unlike

in Nolan, Defendants produced no evidence that Sharbaugh's absence from work had any effect on Defendants' operations or staff morale.

Many of the other decisions relied upon by Defendants in support of their contention that Sharbaugh's request for additional time off was indefinite and unreasonable as a matter of law are similarly distinguishable, and actually reflect that a reasonable jury could conclude that Sharbaugh's requested accommodation was reasonable. For instance, in Garner v. School District of Philadelphia, 63 F.Supp.3d 483 (E.D. Pa. 2014), the court granted the school district's summary judgment motion because the requested medical leave would not have enabled Garner to return to work. Garner, however, had been absent from work for 3 years due to various, unrelated medical conditions, never provided any return-to-work date to the school district, and testified during discovery that he never believed that he could return to work. Garner, 63 F.Supp.3d at 492-93. Sharbaugh's circumstances are markedly different. Had Sharbaugh not been terminated, he would have returned to work less than 8 months after his period of medical leave began.

Several other decisions relied upon by Defendants find that an employee's leave request was unreasonable because the employer had no information about a return-to-work date at the time the employee was terminated. See Walton, 168 F.3d at 664-65, 670-71 (additional time off work was not a reasonable accommodation where the employer had granted the employee between 3 and 10 weeks off work over the course of 4 years, and, immediately prior to termination, the employee was absent from work for approximately 9 weeks, and delayed her return-to-work date repeatedly during that time); Fogleman, 122 F.App'x at 585-86 (plaintiff's request for time off work to obtain treatment for herniated discs and nerve damage deemed unreasonable because she failed to specify the duration of the leave and produced no evidence

that she would be able to return to work after her unspecific treatment); Peyton v. Fred's Stores of Arkansas, Inc., 561 F.3d 900 (8th Cir. 2009) (at time of Peyton's termination, documentation from doctor indicated "return date unknown"); Rex v. Timbar Packaging & Display, No. 10-2371, 2012 WL 4973371, at *1 (M.D. Pa. Oct. 17, 2012) (Rex told his employer that he did not know when he could come back to work); Dogmanits v. Capital Blue Cross, 413 F.Supp.2d 452 (E. D. Pa. 2005) (at the time of Dogmanits' termination, employee was "unsure if her doctor would permit her to return to work" and her doctor had not yet provided any return-to-work date). In contrast, in the instant case, Sharbaugh's surgeon indicated on the FMLA Form submitted in January 2014 that Sharbaugh would be recovered by June 2014. (ECF No. 62-2 at 39-42.) In fact, Sharbaugh was cleared to return to work in July 2014. (ECF No. 62-3 at 15; JSMF ¶ D25.)

Defendants assert in their briefing, however, that Sharbaugh provided no sufficiently definite information about when he could return to work because when he spoke with Ligo on the telephone on February 24, 2014, Sharbaugh explained that his surgeon was only willing to guess that Sharbaugh might be able to return to work 2 to 6 weeks after his second surgery. (JSMF ¶¶ D16-17, ¶¶ P41, P43-44.) When Sharbaugh wrote to Roberts the next day, he arguably expressed more certainty about his ability to return to work 4 to 6 weeks after this surgery. (ECF No. 62-2 at 19; JSMF ¶ D18.) Although Sharbaugh testified during discovery that he intended the February 25, 2014 letter to express the same level of uncertainty that he communicated to Ligo over the telephone, Defendants had no way of knowing Sharbaugh's intent at the time. (ECF No. 64 at 7-8; JSMF ¶ D16.) Defendants, upon receipt of Sharbaugh's February 25, 2014 letter, could not have known whether Ligo had improperly characterized Sharbaugh's telephone request as uncertain when he relayed it to Roberts, or whether Sharbaugh, in the letter, was mischaracterizing his surgeon's estimates as more certain than they were, or

whether Sharbaugh intended the request in the letter to reiterate the request that he made to Ligo on the telephone. Instead of rendering Sharbaugh's leave request indefinite and open-ended as a matter of law, however, these facts establish the critical importance in this case of Defendants' obligation to have engaged in the interactive process. The court will discuss this issue separately in section V.B.2.b.

The decisions that Defendants cite in support of their argument that the ADA does not require an employer to wait indefinitely for an employee's medical condition to be corrected are inapposite. (ECF No. 55 at 17 (citing Silva v. City of Hidalgo, 575 F.App'x 419, 423-24 (5th Cir. 2014), and Myers v. Hose, 50 F.3d 278, 283 (4th Cir. 1995).) As an initial matter, these decisions are not controlling precedent. Regardless, they are readily distinguishable on their facts.

In Myers, the court found that an employer need not wait an unspecified amount of time to allow Myers to correct his chronic heart condition and diabetes, "especially in light of the uncertainty of cure." Myers, 50 F.3d at 283. Sharbaugh did not require medical leave to correct a chronic health condition; he required medical leave to recover from two surgeries on his left knee.

In Silva, a police officer who was assigned to the SWAT team before she broke her leg while jogging, claimed that the City of Hidalgo violated the ADA by failing to provide her a reasonable accommodation, such as a desk duty or light duty position or an unpaid leave of absence while she recovered from surgery on her leg. Silva, 575 F.App'x at 421-24. The court ruled in favor of the City because a) the record reflected that Silva's doctor was only willing to state that she would require "at least another three months" off work, after her 3-month FMLA leave period expired, b) the City established that, as a matter of practice and policy, it never

permitted employees to take unpaid leaves of absence, and c) Silva failed to prove that a vacant desk or light duty job existed at the time she requested that accommodation. Silva, 575 F.App'x at 423-24.    None of these facts are applicable to Sharbaugh's claim in the instant case; Sharbaugh's surgeon provided an estimated return-to-work date when Sharbaugh began his period of medical leave, Defendants presented no evidence that unpaid leaves of absence were never granted, (ECF No. 54 at 70), and Sharbaugh never asked Defendants for a light duty position.

Those decisions relied upon by Defendants that are from courts within the jurisdiction of the Court of Appeals for the Third Circuit, e.g., Garner, Nolan, Rex, ECF No. 55 at 16, are likewise distinguishable, as explained earlier in this opinion, including on the ground that the employee had been absent from work for terms of years and provided no return-to-work information to the employer.    In none of the decisions relied upon by Defendants 1) was a) leave required in order to recover from surgery, b) the employer given a return-to-work date estimate when the employee began the initial period of leave, c) the employee able to return to work within weeks of the initial return-to-work estimate, and d) the employee able to return to work within 8 months of beginning leave, and 2) did the employer fail entirely to engage in the interactive process, going so far as to ignore the employee's oral and written requests for additional time off work, see Sec. V.B.2.b., infra.

Based upon this record, a reasonable jury could conclude, under the circumstances of this case, that Sharbaugh requested a temporary period of leave that would have rendered him able to perform the essential functions of his job in the near future. Gardner, 636 F.App'x at 84; Fogleman, 122 F.App'x at 585; Sowell, 139 F.Supp.3d at 700-01.    Defendants, therefore, cannot

establish that the requested accommodation was unreasonable as a matter of law on the ground that it was indefinite and open-ended.

### (b) <u>Desire to Eliminate Position</u>

Defendants next contend that Sharbaugh's requested accommodation was unreasonable as a matter of law because no employer is obligated to hold open a position that it has decided to eliminate. (ECF No. 64 at 2, 10-11.)

The court previously examined the legal authorities relied upon by Defendants in support of the related proposition that being required to hold a position for an absent employee is an undue burden as a matter of law. <u>See</u> Sec. V.B.2.a.i., <u>supra</u>. For the same reasons, those authorities do not establish that Sharbaugh's requested accommodation was unreasonable as a matter of law.

There is also a factual flaw inherent in Defendants' argument. The undisputed record reflects that Defendants did not decide to eliminate the Environmental Services Director position until after they decided to terminate Sharbaugh. (JSMF ¶ P86.) Beardsley testified that prior to Sharbaugh's termination there had been internal discussions about whether Defendants would fill the position if Sharbaugh was unable to return from his medical leave, but that no decision was made about the matter prior to Sharbaugh's termination. (ECF No. 62-2 at 9 (depo. pg. 54).) In other words, had Sharbaugh returned from leave, his position would have remained available to him. This circumstance belies Defendants' claim that holding Sharbaugh's position open until he returned from leave renders Sharbaugh's requested accommodation unreasonable as a matter of law.

To the extent Defendants will contend that this evidence indicates that they intended to hold Sharbaugh's position open only for the period of time guaranteed by the FMLA, i.e., until February 21, 2014, Defendants' desire to eliminate the Environmental Services Director position is still not probative of the unreasonableness of Sharbaugh's requested accommodation.    Defendants offer no proof that their options upon expiration of Sharbaugh's FMLA leave were binary; i.e., fire Sharbaugh or hold the Environmental Services Director position open for him until he was able to return to work.    To the contrary, even before February 21, 2014, Defendants could have eliminated the Environmental Services Director position, laid off Sharbaugh, and terminated his employment, all without violating the FMLA. 29 U.S.C. § 1614(a)(1); 29 C.F.R. §§ 825.214, 825.816(a)(1).    "An employee has no greater right to reinstatement… than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a).    Although Sharbaugh is not asserting his FMLA rights in the instant case, these regulations demonstrate that Sharbaugh's request for additional time off work cannot be unreasonable on the ground that a leave extension would have forced Defendants to hold the Environmental Services Director position open for him until he returned.    Even during the period of Sharbaugh's FMLA-protected leave, when Sharbaugh specifically held reinstatement rights under federal law, Defendants could have eliminated his position for reasons unrelated to Sharbaugh's absence from work; i.e., because the position was deemed to be an unnecessary layer of management.

After Sharbaugh's reinstatement rights under the FMLA expired, the ADA obligated Defendants to return Sharbaugh to an available, equivalent position after his period of medical leave. Gaul v. Lucent Tech., Inc., 134 F.3d 576, 580 (3d Cir. 1998).    Provided Defendants could articulate legitimate nondiscriminatory and nonretaliatory reasons for doing so,

Defendants could have eliminated Sharbaugh's position in the interim. Compare Chasse v. Computer Sciences Corp., 453 F.Supp.2d 503, 517-18 (D. Conn. 2006) (plaintiff's position eliminated while she was on medical leave due to reduction in force and corporate restructuring; employer's motion for summary judgment on FMLA and ADA granted), with Lindsey v. St. Mary Med. Ctr., No. 14-4265, 2016 WL 878307, at \*9, \*10 (E.D. Pa. Mar. 7, 2016) (record reflected that employer eliminated plaintiff's position solely because she was unable to return to work after her FMLA leave period expired; ADA, FMLA, and PHRA claims survived employer's motion for summary judgment).     When Sharbaugh returned from leave, Defendants could have assigned him to the same job in a different, but comparable, location or to a different, but equivalent, job at the same location, negotiated with Sharbaugh to accept a different job, or they could have notified him when his position was eliminated and laid him off, with whatever severance or unemployment benefits would have been otherwise available to him. Chasse, 453 F.Supp.2d at 517-18 (noting that employee elected to receive long-term disability benefits rather than severance when notified by employer that her position was eliminated while she was on medical leave).     Under the circumstances, Defendants' desire to eliminate the Environmental Services Direction position does not render Sharbaugh's request for additional time off work unreasonable as a matter of law.

### (c) Summary

In summary, neither the purported indefiniteness of Sharbaugh's leave request nor Defendants' desire to eliminate the Environmental Services Director position establishes that Sharbaugh's accommodation request was unreasonable as a matter of law.     A reasonable jury could find that Sharbaugh requested a reasonable accommodation.     Entry of judgment in Defendants' favor on the failure to accommodate claim is, therefore, improper.

### b. **Failure to Engage in the Interactive Process**

As set forth above, although failure to engage in the interactive process is not an independent basis for relief under the ADA, it is one way that an employee can demonstrate that an employer breached its duty to provide a reasonable accommodation. Colwell, 602 F.3d at 504 (citing Williams, 380 F.3d at 772 and Taylor, 184 F.3d at 317). In this case, Defendants argue that they had no duty to engage in the interactive process with Sharbaugh, making it impossible, as a matter of law, for Sharbaugh to support his failure to accommodate claim with evidence that Defendants failed to engage in the interactive process. Defendants are incorrect, with respect to both the facts and the law. Based upon the summary judgment record, a reasonable jury could conclude that Defendants had a duty to engage in further communications with Sharbaugh after he requested additional time off work in February 2014. There is no factual dispute that Defendants engaged in no interaction with Sharbaugh between the time that Sharbaugh requested an accommodation and the time that they terminated his employment, and there is sufficient evidence in the summary judgment record to allow a reasonable jury to find that Defendants acted in bad faith in failing to interact with Sharbaugh about his accommodation request. The court, therefore, is precluded from entering judgment as a matter of law in Defendants' favor on Sharbaugh's failure to accommodate claim for this additional reason.

### i. **Duty to Interact**

Defendants proffer several theories in support of their assertion that they had no duty to interact with Sharbaugh after he spoke with Ligo on February 24, 2014 and sent Roberts the February 25, 2014 letter. First, Defendants claim that they had no duty to interact with Sharbaugh because Sharbaugh made it impossible for them to accommodate him by expressing "uncertainty" about when he could return to work, making obtaining additional information

useless. (ECF No. 55 at 19.)   Defendants' contention that they had no duty to seek clarification in the face of the purported uncertainty in Sharbaugh's request is contrary to law.   The law imposes a duty on the employer to request any additional information that the employer believes it needs in order to devise a reasonable accommodation. Allen, 418 F.Supp.2d at 622-23 (citing Taylor, 184 F.3d at 315).   Specifically when an employee requests additional time off work, the employer has a duty to interact with the employee to determine whether the leave being requested is reasonable under the circumstances. Sowell, 139 F.Supp.3d at 701; Dogmanits, 413 F.Supp.2d at 460.   Notably, the return-to-work dates that Sharbaugh provided to Ligo and Roberts in February 2014, were not certified by Sharbaugh's surgeon, and were, inexplicably, 2-3 months sooner than those attested to on the FMLA Form.   These facts do not absolve Defendants of their obligation to further interact with an employee who requests additional time off work as a reasonable accommodation; they instead indicate a specific need to seek additional information and clarification of the employee's circumstances.

Second, Defendants claim that they had no duty to engage in the interactive process with Sharbaugh because the requested accommodation would not have instantaneously enabled him to perform the essential functions of his position. (ECF No. 55 at 11, 15-17, 19.) There is no such requirement in the law that an accommodation render an employee immediately capable of working.   Rather, where a period of leave is requested as an accommodation, the employer is tasked with assessing whether the requested leave would enable the employee to perform his essential job functions in the near future. Gardner, 636 F.App'x at 84; Fogleman, 122 F.App'x at 585; Sowell, 139 F.Supp.3d at 700-01.   Defendants proffer no evidence establishing why a less than eight-month leave of absence could not qualify as returning to work "in the near future" under the circumstances of this case.   To the extent Defendants rely upon the fact that,

even after 8 months, Sharbaugh needed to use a cane, making him incapable of performing his allegedly non-sedentary job, they miss the mark. (ECF No. 55 at 25 n.8.)  It does not follow from Sharbaugh's admissions at his deposition that his job was not entirely sedentary, JSMF ¶ P15, that he could not perform the essential functions of his job with a cane.  Defendants proffer no evidence to establish their contention that Sharbaugh could not do his job because he needed to use a cane.  This factor does not absolve Defendants of their obligation to further interact with an employee who requests additional time off work as a reasonable accommodation.

### ii. Evidence of Bad Faith

There is ample evidence in the summary judgment record from which a reasonable jury could conclude that Defendants did not make a good faith effort to assist Sharbaugh in obtaining an accommodation, which provides further support for a jury verdict in Sharbaugh's favor on his failure to accommodate claim.  By way of example only, after receiving Sharbaugh's request for an accommodation in late February 2014, instead of seeking clarification, certainty, or a doctor's certification of Sharbaugh's return-to-work dates, Defendants a) confirmed that Ligo did not promise to hold Sharbaugh's job for him and b) contacted counsel in order to assess whether or not Sharbaugh's request "stopped short" of seeking a reasonable accommodation. (ECF No. 54 at 85-86; ECF No. 62-1 at 12-13, 15; ECF No. 62-2 at 8, 10; JSMF ¶¶ P53, P56, P58.)  There is no dispute that Defendants failed to interact, at all, with Sharbaugh after he requested additional time off work. (JSMF ¶ P56; ECF No. 62-1 at 12-13 (depo. pgs. 60-61), 15 (depo. pg. 71); ECF No. 62-2 at 10 (depo. pgs. 62-63).)  A reasonable jury could, based upon this evidence, conclude that Defendants acted in bad faith by purposefully avoiding further interaction with Sharbaugh that may have clarified Sharbaugh's return-to-work date,

thereby rendering his requested accommodation reasonable. These circumstances alone preclude entry of judgment in Defendants' favor on Sharbaugh's failure to accommodate claim.

### iii. **Summary**

Under these circumstances, a reasonable jury could conclude that Defendants had a duty to interact with Sharbaugh after he requested additional time off work, and failed, in bad faith, to assist Sharbaugh in obtaining a reasonable accommodation. Defendants' motion for summary judgment with respect to Sharbaugh's failure to accommodate claims must be denied for this additional reason.

## VI. **Retaliation Claim (Count II)**

### A. **Legal Principles**

The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made lawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this chapter." 42 U.S.C. § 12203(a). The same is true under the PHRA. 43 Pa. Cons. Stat. § 955(d). To establish a prima facie case of retaliation under the ADA and PHRA, "a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Gardner, 636 F. App'x at 85 (citing Williams, 380 F.3d at 759). Requesting an accommodation, including additional leave, is a protected employee activity under the ADA. Sowell, 139 F.3d at 702 (citing Sulima v. Tobyhanna Army Depot, 602 F.3d 177, 188 (3d Cir. 2010)).

The third element of the prima facie case requires a determination whether plaintiff presented sufficient evidence of a causal link between his protected activity and the adverse action by his employer. Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001). A causal connection can be established between the protected activity and the adverse employment action by: (1) showing that the temporal proximity is unduly suggestive; (2) showing inconsistencies in the defendants' testimony; or (3) pointing to ongoing antagonism. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280-81 (3d Cir. 2001). If a plaintiff relies solely on temporal proximity to establish a causal connection, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997). Time periods of up to 10 days have been deemed suggestive of a causal link, although timing alone is rarely sufficient to establish causation. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003); Weston v. Commw. of Pa., 206 F.3d 420, 431 n.5 (3d Cir. 2001). Where temporal proximity is not unduly suggestive of retaliatory motive, that same evidence, when combined with evidence of antagonism or inconsistencies can be sufficient to demonstrate the necessary causal link. Farrell, 206 F.3d at 280-81.

If a plaintiff can establish a prima facie claim of disability retaliation, then "the

burden shifts to the employer to advance a legitimate, non-retaliatory reason for its adverse

employment action." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 187 (3d Cir. 2003);

Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).[5]   The employer's burden at this

stage is relatively light and is satisfied if the defendant articulates any legitimate reason for the

adverse employment action. Id.   When the employer meets that burden, the burden shifts back

to the employee, who then must "prove by a preponderance of the evidence that the legitimate

reasons offered by the [employer] were not its true reasons, but were a pretext for

discrimination." Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000) (citing Jones v. Sch. Dist.

of Phila., 198 F.3d 403, 410 (3d Cir. 1999)).

Although the burden of production shifts under this three-part framework, referred

to as the McDonnell Douglas test, the burden of persuasion remains, at all times, on the

employee. Id. at 500–01 (citing Jones, 198 F.3d at 410); see McDonnell Douglas v. Green , 411

U.S. 792, 802 (1973).   The employee's burden in a retaliation case is to present evidence from

which a factfinder could reasonably believe that retaliation was more likely than not a

_____

[5] There is some dispute in the parties' briefing about whether Sharbaugh produced direct evidence of Defendants' retaliatory intent such that the more plaintiff-friendly, mixed-motives Price Waterhouse test applies. (ECF No. 55 at 22-23; ECF No. 59 at 14-17); Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Buchsbaum v. Univ. Physicians Plan, 55 F. App'x 40, 43 (3d Cir. 2002).   Where, however, a plaintiff can survive summary judgment under the McDonnell Douglas test, the court need not consider the Price Waterhouse test. Borelli v. Metal Traders, Inc., No. 06-869, 2008 WL 2914795, at *12 n.2 (W.D. Pa. July 24, 2008).   The court, therefore, need not decide at this juncture whether Sharbaugh produced direct evidence.   It follows that the court need not, and will not, discuss here what effect the Supreme Court's holding in Gross v. FBL Financial Services, Inc., 557 U.S. 167 (2009), that the mixed-motives framework of Price Waterhouse does not apply to ADEA claims, has on retaliation claims asserted under the ADA. See Warshaw v. Concentra Health Servs., 719 F. Supp. 2d 484, 502-03 (E.D. Pa. 2010) (holding that Gross bars mixed-motives retaliation claims under the ADA); Caldwell v. KHOU-TV & Gannett Co., No. 15-0308, 2016 WL 3181167, at *4 n.21 (S.D. Tex. June 3, 2016); Clark v. Jewish Childcare Ass'n, Inc., 96 F. Supp. 3d 237, 249 n.4 (S.D.N.Y. 2015).

determinative cause, not just a motivating cause, of the adverse employment action. Matos v. Merck & Co., Inc., 643 F.App'x 187, 190-91 (3d Cir. 2016); Gardner, 636 F. App'x at 85-86 & n.8 (citing Shaner, 204 F.3d at 500 and Woodson v. Scott Paper Co., 109 F.3d 913, 931-35 (3d Cir. 1997)).

Upon reaching the third step in the McDonnell Douglas analysis, an employee may defeat a motion for summary judgment by pointing to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that a retaliatory reason was more likely than not the cause of the employer's action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). Under the first Fuentes prong, a plaintiff cannot just show that defendant's decision was wrong or mistaken, but must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and infer that the employer did not act for the asserted nondiscriminatory reasons. Fuentes, 32 F.3d at 765. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000). Under the second Fuentes prong, a plaintiff must point to evidence that allows a factfinder to conclude that his disability was a determinative factor in the employment decision. Simpson, 142 F.3d at 644–45. The kinds of evidence the plaintiff may produce are: 1) the employer has previously retaliated against the plaintiff; 2) the employer has retaliated against other persons within the plaintiff's protected class; and 3) the employer has more favorably treated similarly situated persons who did not request reasonable accommodations. Simpson, 142 F.3d at 645.

**B.** <u>Discussion</u>

**1.** <u>The Parties' Arguments</u>

Defendants seek entry of judgment as a matter of law on Sharbaugh's ADA retaliation claim on three grounds: (1) Sharbaugh has no direct evidence of retaliation;[6] (2) Sharbaugh cannot establish the requisite causal connection between his request for an accommodation and his termination; and (3) Sharbaugh has no evidence that Defendants' proffered legitimate, nonretaliatory reasons for his termination are pretextual. (ECF No. 55 at 31.) Defendants also argue that Sharbaugh's retaliation claim is nothing more than a restatement of his failure to accommodate claim, and that both claims cannot be pursued at the same time. (ECF No. 55 at 33-34.)

In opposition, Sharbaugh contends that he presented sufficient evidence to establish a causal link between his February 24 and 25, 2014 requests for an accommodation and his March 7, 2014 termination and to permit a reasonable jury to find that Defendants' proffered reasons for his termination are pretextual. (ECF No. 59 at 24-29.) With respect to Defendants' argument about the repetitiveness of his failure to accommodate and retaliation claim, Sharbaugh contends that the legal authorities cited by Defendants do not stand for the proposition for which Defendants cite them. (ECF No. 59 at 24 at n.17.)

---

[6] Because the court concludes that Sharbaugh's claim survives summary judgment even without direct evidence of retaliation, the court need not address Defendants' first argument in this opinion.

## 2. **Analysis**

### a. **Causal Connection**

To establish a prima facie case of retaliation, Sharbaugh must show that he engaged in protected activity, suffered an adverse employment action, and that a causal connection exists between the two events. Fogleman, 283 F.3d at 567-68; Gardner, 636 F. App'x at 85. There is no dispute in this case that Sharbaugh engaged in protected activity when he requested more time off work to recover from knee surgery and suffered an adverse employment action when his employment was terminated. Sowell, 139 F.3d at 702. The only issue in dispute with respect to Sharbaugh's ability to establish a prima facie case of retaliation is whether Sharbaugh proffered sufficient evidence of a causal connection between the two events. The court concludes that Sharbaugh presented sufficient evidence of a causal connection to defeat Defendants' motion for summary judgment.

Sharbaugh requested an accommodation orally on February 24, 2014, and in writing on February 25, 2014. (ECF No. 62-2 at 19; JSMF ¶¶ D15-16, D18, D41-42.) Defendants made the decision to terminate Sharbaugh sometime between February 28, 2014 (a Friday) and March 7, 2014 (the following Friday). (JSMF ¶¶ P63, P88.)[7] The record includes evidence reflecting that the decision to terminate Sharbaugh was made as early as Tuesday, March 4, 2014, 8 calendar days, and 6 business days, after Sharbaugh first requested an accommodation. (JSMF ¶¶ P61-62; ECF No. 62-2 at 49.) A reasonable jury could find this

---

[7] Defendants' assertion that they both "contemplated" his termination and warned Sharbaugh that he could be terminated prior to his February 24, 2014 request for an accommodation is illogical and not supported by the facts. (ECF No. 55 at 33.) Defendants proffer no evidence that they had decided to terminate Sharbaugh's employment at the time Roberts sent the February 14, 2014 letter to him. In response to that letter, Sharbaugh could have challenged Defendants' calculation of his FMLA leave time, resigned his position, returned to work, or asked for additional time off work. Defendants submit no evidence that as of February 14, 2014, they decided that Sharbaugh would be terminated in any or all of those circumstances.

timeline to qualify as unduly suggestive temporal proximity and to establish a causal connection standing alone. Lichtenstein v. UPMC, 691 F.3d 294, 307 (3d Cir. 2012) (7 days is unduly suggestive); Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (10 days is unduly suggestive); Capps v. Mondelez Global LLC, 147 F.Supp.3d 327, 337 (E.D. Pa. 2015) (a period of 6 days was characterized "at the long end of" being unusually suggestive); Sowell v. Kelly Services, Inc., 139 F.Supp.3d 684, 695 (E.D. Pa. 2015) (7 days is "within the realm of what courts have found to be sufficient to establish a prima facie case"); but see Williams v. Phila. Housing Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004) (2 months is not unusually suggestive).

Even if this temporal proximity was not deemed sufficient, standing alone, to establish the required causal link, Sharbaugh argues that when it is combined with the evidence of ongoing antagonism and inconsistencies in the record, the necessary causal link is established. (ECF No. 59 at 26.)    The court agrees. Lauren, 480 F.3d at 267; Farrell, 206 F.3d at 280-81. Sharbaugh points to Roberts' February 12, 2014 email to Beardsley about the impending expiration of this FMLA leave, in which she makes comments such as "here we are again" and "this was a mess last time" as evidence of antagonism. (ECF No. 59 at 25, 26.)    Sharbaugh also notes that Beardsley admits that one reason Sharbaugh's employment was terminated was because he needed more time off to recover from knee surgery. (Id.)    This evidence is indeed indicative of Defendants' adverse attitude toward Sharbaugh, but the record is replete with additional evidence that would support a reasonable jury finding that Sharbaugh was terminated in retaliation for seeking a reasonable accommodation.    This evidence will be examined in detail in the next section in the pretext analysis.

By way of example only, the letter notifying Sharbaugh that his FMLA leave was set to expire was not mailed until almost a week after it was drafted, and only 3 days before the date on which his FMLA leave was scheduled to expire. (ECF No. 62-2 at 43-44, 47; JSMF ¶¶ P24-25, P30-31, P37.)    Defendants never sought additional information or clarification in response to Sharbaugh's oral or written requests for an accommodation, instead deciding, after consultation with counsel, that because Sharbaugh's request "stopped short" of qualifying as a request for a temporary and finite period of leave, they were able to terminate his employment. (ECF No. 62-1 at 12-13 (depo. pgs. 60-61), 15 (depo. pg. 71); ECF No. 62-2 at 10 (depo. pgs. 62-63; JSMF ¶¶ P43-44, P53, P56, P58; D17.)    Roberts, in the Termination Letter, rebuked Sharbaugh for not discussing his need for more time off with her after receipt of her February 14, 2014 letter (which Sharbaugh did not receive until February 24, 2014), even though Sharbaugh sent a written request for an accommodation directly to Roberts on February 25, 2014, and Ligo, Sharbaugh's supervisor, informed Roberts about his February 24, 2014 discussion with Sharbaugh. (ECF No. 62-1 at 1, ECF No. 62-2 at 19; JSMF ¶¶ P43-44, ¶ D17.)    Roberts claimed in her February 12, 2014 email to Beardsley that Sharbaugh had provided no date for his second knee surgery to Defendants when, in fact, Sharbaugh's FMLA Form indicates that it was scheduled for March 7, 2014. (ECF No. 62-2 at 39-42, 44.)    These are only examples of the evidence of antagonism and inconsistencies that a reasonable jury could rely upon, in conjunction with the temporal proximity of less than 10 days, to find the required causal link between Sharbaugh's request for an accommodation and the termination of his employment. Sharbaugh, therefore, presented sufficient evidence to establish a prima facie case of retaliation.

### b. **Legitimate Nonretaliatory Reason and Pretext**

Because Sharbaugh proffered sufficient evidence to establish a <u>prima</u> <u>facie</u> case of disability retaliation, the burden of production shifts to Defendants to articulate a legitimate, nondiscriminatory reason for terminating Sharbaugh's employment. <u>Matos</u>, 643 F.App'x at 190-91; <u>Fuentes</u>, 32 F.3d at 763. Defendants offer two legitimate nondiscriminatory reasons: (1) he exhausted his FMLA leave and had no other available time off; and (2) his position was eliminated. (ECF No. 55 at 27-31.)[8] Having articulated these reasons, Sharbaugh must show that these were not Defendants' true reasons for firing him, but were instead pretexts for retaliation. <u>Shaner</u>, 204 F.3d at 500; <u>Jones</u>, 198 F.3d at 410; <u>Fuentes</u>, 32 F.3d at 763. To do so, Sharbaugh must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious retaliatory reason was more likely than not a determinative cause of the employer's action. <u>Fuentes</u>, 32 F.3d at 764.

The court applies the two-part <u>Fuentes</u> test to determine whether Sharbaugh can prove pretext: prong one focuses on whether there are "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" that a reasonable jury could find them "unworthy of credence;" and prong two permits Sharbaugh to survive summary judgment if he can demonstrate that his disability was a determinative factor in Defendants' employment decision by showing that Defendants previously retaliated against him or treated employees differently based on whether they requested reasonable accommodations. <u>Fuentes</u>, 32 F.3d at 762; <u>Simpson</u>, 142 F.3d at 644–45. Although Sharbaugh

---

[8] Sharbaugh claims that instead of being legitimate nonretaliatory reasons for his termination, these are actually direct evidence of Defendants' retaliatory animus and intent, making the pretext analysis of <u>McDonnell Douglas</u> inapplicable. (ECF No. 59 at 14-17.) As set forth above, footnotes 5-6, <u>supra</u>, the court need not resolve this question because Sharbaugh's retaliation claim survives summary judgment under the less plaintiff-friendly <u>McDonnell Douglas</u> test.

does not identify evidence of pretext in these terms because he contends that the Price Waterhouse test applies, see footnote 5, supra, the evidence establishing pretext is readily apparent on this record, and precludes entry of judgment in Defendants' favor on Sharbaugh's retaliation claim.

### i. **Exhaustion of FMLA Leave**

Defendants contend that they terminated Sharbaugh's employment because he exhausted his period of FMLA leave, making him eligible for immediate termination pursuant to their policies and procedures. (ECF No. 55 at 27-28.)  This reason, however, ignores the body of case law, discussed above, which establishes that additional time off work can be a reasonable accommodation under the ADA.   The court already examined the evidence and arguments proffered by Defendants in support of their contention that they had no obligation to provide Sharbaugh additional time off work after his period of FMLA leave expired because his request was unreasonable as a matter of law. See Sec. V.B.2.a.ii.(a)., supra.

As a factual matter, Defendants' explanation suffers from weaknesses that would permit a reasonable jury to disbelieve that it is the real reason Sharbaugh's employment was terminated:

- Roberts, Defendants' Human Resources Director, claimed that she did not understand Sharbaugh to be making a request for a reasonable accommodation under the ADA when Sharbaugh spoke with Ligo and wrote her a letter in late February 2014. (ECF No. 62-1 at 11 (depo. pg. 55), 14 (depo. pg. 67).)  Now, however, Defendants concede that Sharbaugh was making a request for a reasonable accommodation at that time. (JSMF ¶ P71 (Defendants' response).)

- When Roberts wrote to Beardsley about the expiration of Sharbaugh's FMLA leave, she falsely claimed that Sharbaugh had not indicated when his second knee surgery would take place. (ECF No. 62-2 at 44.)  In fact, the FMLA

Form, which was received by Roberts weeks earlier, indicated that Sharbaugh's second surgery was scheduled for March 7, 2014. (ECF No. 62-2 at 39-42.)

- When Roberts wrote to Beardsley about the expiration of Sharbaugh's FMLA leave she demonstrated antagonism by using phrases such as "here we are again" and "this was a mess last time." (ECF No. 62-2 at 44; JSMF ¶¶ P24-25.)  In her immediate responsive email, Beardsley raised the possibility that counsel may have to become involved again if Sharbaugh's daughter intervened on Sharbaugh's behalf again in order to obtain a leave extension for Sharbaugh. (ECF No. 62-2 at 46.)

- Although the letter warning Sharbaugh about the impending expiration of his FMLA leave was drafted by February 12, 2014, and dated February 14, 2014, it was not mailed until February 18, 2014 and was not received until February 24, 2014, three days after Sharbaugh's FMLA leave had expired. (ECF No. 62-2 at 43-44, 47; JSMF ¶¶ P24-25, 30-31, 37.)

- Although Ligo, Sharbaugh's supervisor, told Sharbaugh that Defendants would "get back" to him about his February 24, 2014 request for additional time off work, Defendants made no further contact with Sharbaugh before sending the March 7, 2014 Termination Letter. (JSMF ¶¶ P44, P56, P58; ¶ D17; ECF No. 62-1 at 12-13 (depo. pgs. 60-61), 15 (depo. pg. 71); ECF No. 62-2 at 10 (depo. pgs. 62-63).)

- During the time period between Sharbaugh's request for a reasonable accommodation and the Termination Letter, Defendants consulted with counsel and Roberts sought permission to "warn" Sharbaugh about being absent from work, but no one affiliated with Defendants contacted Sharbaugh about his request. (ECF No. 54 at 86; ECF No. 62-2 at 24; JSMF ¶ P52.)

- Roberts claimed in the Termination Letter that Sharbaugh had not discussed his situation with her, when, in fact, Sharbaugh sent Roberts a letter indicating that he needed more time off work on February 25, 2014. (ECF No. 62-1 at 1; ECF No. 62-2 at 19.)  Roberts never responded to Sharbaugh's letter.

- In response to Sharbaugh's request for an extension of his leave, Beardsley consulted with counsel and concluded that Sharbaugh could be terminated because he had not done enough to request a reasonable accommodation. (JSMF ¶¶ P52-53.)

These facts reflect weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions sufficient to permit a reasonable jury to conclude that Defendants' claim that it terminated Sharbaugh's employment because his FMLA leave period expired is unworthy of belief. The court, therefore, need not examine the second prong of the <u>Fuentes</u> test with respect to this proffered legitimate, nonretaliatory reason.[9]

### ii. Eliminate Position

Defendants offer a second, although related, reason for Sharbaugh's termination, i.e., they wanted to eliminate the Environmental Services Director position that Sharbaugh held. The court previously discussed this explanation in assessing the reasonableness of Sharbaugh's requested accommodation. <u>See</u>, Sec. V.B.2.a.ii.(b)., <u>supra</u>. As set forth previously, this explanation reflects weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions sufficient to allow a reasonable jury to find that it is unworthy of belief. For example, the record reflects that no decision was made to eliminate the Environmental Services Director position until after the decision to terminate Sharbaugh was made. (ECF No. 62-2 at 9 (depo. pg. 54).); JSMF ¶¶ P86-86.) The chronology reflects that the decision to eliminate Sharbaugh's position followed Defendants' decision to terminate Sharbaugh's employment, making it impossible for the former decision to have caused the latter decision. In addition, Defendants present no evidence or legal argument establishing that they could not have eliminated

---

[9] The court notes that there is no evidence in this record that Defendants previously retaliated against Sharbaugh, or other employees, for requesting reasonable accommodations, or treated employees who requested reasonable accommodations less favorably than those who did not.

Sharbaugh's position while he was on an extended medical leave, or that the only option available to Defendants if they decided to eliminate Sharbaugh's position while he was on leave was to terminate his employment. Under these circumstances, Defendants' desire to eliminate the positon of Environmental Services Director cannot be one of the legitimate reasons for Sharbaugh's termination.

These facts are sufficient to permit a reasonable jury to disbelieve that Defendants terminated Sharbaugh's employment because they wanted to eliminate his position, and, instead, believe that they terminated Sharbaugh's employment due to his disability and their need to accommodate it. The court, therefore, need not examine the second prong of the Fuentes test with respect to this proffered legitimate, nondiscriminatory reason. See footnote 9, supra.

### iii. Summary

In summary, the record contains sufficient evidence to permit a reasonable jury to find that the two reasons proffered by Defendants for terminating Sharbaugh's employment are a pretext for disability retaliation. For this reason, Defendants' motion for summary judgment on Count II of the complaint must be denied

### c. Duplicative Failure to Accommodate Claim

In their initial summary judgment brief, Defendants argued that Sharbaugh's retaliation claim should be removed from this case because it is duplicative of his failure to accommodate claim. (ECF No. 55 at 33-34.) In support of this argument, Defendants cite two decisions issued by different judges of the United States District Court for the Eastern District of Pennsylvania. (Id. (citing Garner, 63 F.Supp.3d 483 and Williams, 230 F.Supp.2d 631).) In opposition, Sharbaugh notes that Williams, both at the district court and appellate level, does not stand for the proposition for which it was cited. (ECF No. 59 at 24 n.17.) Defendants do not

pursue this line of argument in their reply brief, and arguably have abandoned it. (ECF No. 65 at 15-16.)

Even if Defendants' argument remains viable, it is not supported by the decisions to which they cite, and is not otherwise well-founded. This court discussed the Garner decision previously in this opinion. See pg. 33-34, supra. In Garner, a school security officer sought additional medical leave after being absent from work for three years and being unable to provide any information about when he could return to work. Garner, 63 F.Supp.3d at 492-93. The school district denied Garner's request for more time off work and terminated his employment. Id. Garner asserted both failure to accommodate and retaliation claims against the school district. Relying entirely on the district court's decision in Williams, the court rejected Garner's retaliation claim as "nothing more than a repackaged statement" of his failure to accommodate claim. Garner, 63 F.Supp.3d at 500. The court also found that there was no evidence in the record that the school district terminated Garner's employment in retaliation for his request for additional time off work, noting that Garner had received several periods of medical leave in the past, even without providing the necessary medical documentation. Id. Garner would seemingly support Defendants' contention that Sharbaugh's retaliation and failure to accommodate claims cannot proceed in tandem. The Williams decision, however, illustrates why this conclusion is incorrect.

As an initial matter, both the district court and the court of appeals examined Williams' failure to accommodate and retaliation claims on their merits, which alone indicates that neither decision could stand for the proposition that failure to accommodate and retaliation claims can never be pursued in the same case. Williams, 380 F.3d at 758-74; Williams, 230 F.Supp.2d at 637-47. A close examination of the facts and claims at issue in Williams further

illustrates that Williams does not stand for the proposition for which Defendants cite it.    In
Williams, a housing authority police officer was placed on leave after he had a confrontation
with a superior officer, and was diagnosed with severe depression, placed on medical leave, and
restricted from carrying a firearm.    While on leave, Williams requested that he be permitted to
work in the radio room, where he would not be required to carry a firearm. Williams, 230
F.Supp.2d at 634-35.    The housing authority refused, citing Williams' continued access to
firearms in that position.    About two months later, Williams was terminated after he refused or
failed to request an extension of his soon-to-be expired medical leave, as instructed by the
housing authority. Id. at 625-36.

                Williams filed suit alleging, among other things, that the housing authority failed
to accommodate his disability by reassigning him to the radio room, and retaliated against him
for requesting that accommodation.    The district court characterized Williams' retaliation claim
as consisting of two different incidents of retaliation: (1) the housing authority's refusal to
transfer him to the radio room in October 1998; and (2) the housing authority's termination of his
employment in December 1998. Id. at 639.    The court found that the first incident of alleged
retaliation was circular and amounted to nothing more than a recast failure to accommodate
claim, i.e., that Williams was denied a transfer to the radio room in retaliation for requesting a
transfer to the radio room. Id. at 639-40 & n.10.    Even assuming that the claim could be
pursued, the court concluded that Williams proffered insufficient evidence of a causal connection
to avoid summary judgment. Id. at 640.    The court examined the second incident of retaliation,
i.e., that Williams was terminated in retaliation for requesting a transfer to the radio room, on its
merits, but found that the claim could not survive summary judgment because Williams failed to
proffer evidence that the housing authority's reason for terminating him was a pretext for

retaliation. Id. 640-42. The court did not consider this second incident of retaliation to be circular or redundant of Williams' other claims.

Sharbaugh's retaliation claim is akin to Williams' second alleged incident of retaliation, not the first. Defendants' reliance on the holding made with respect to the first incident of retaliation is improper and ineffective in establishing that Sharbaugh cannot pursue both a failure to accommodate claim and a retaliation claim in this case. Defendants' argument is incongruent with the sole legal authority on which it is based.
Notably, on appeal, the Court of Appeals for the Third Circuit's opinion includes no discussion of Williams' first alleged incident of retaliation. Williams, 380 F.3d at 759-61.[10]

There is no legal proscription on Sharbaugh pursuing both his failure to accommodate and retaliation claims in this case. The court can address matters pertinent to trial management, such as duplication of damages, during pretrial proceedings. There is no basis, however, for this court to enter judgment as a matter of law on either claim on the ground that Sharbaugh's retaliation claim is duplicative of his failure to accommodate claim.

## VII.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be denied. An appropriate order will be filed contemporaneously with this opinion.

Date: November 21, 2016             BY THE COURT:


                                    /s/ *Joy Flowers Conti*
                                    Joy Flowers Conti
                                    Chief United States District Judge

---

[10] The appellate court found that Williams' second alleged incident of retaliation failed because Williams presented insufficient evidence of a causal connection, an element that the district court assumed, for purposes of summary judgment only, had been established. Williams, 380 F.3d at 759-61.